UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JUSTIN COLE SOCHA**,

      Plaintiff,

v.

**CITY OF EAST LANSING**, a Municipal corporation,
East Lansing Police Officer **JEFFREY THOMAS**,
East Lansing Police Officer **ANTHONY FULLER**,
in their individual and official capacities,

      Defendants.
_____/

Racine Michelle Miller (P72612)
**WE FIGHT THE LAW, PLLC**
Attorneys for Plaintiff
17600 Northland Park Court, Suite 201
Southfield, MI 48075
(248) 443-9030 Fax: (248) 443-9031
e-mail: racine.michelle@gmail.com
_____/

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY

NOW COMES the Plaintiff, JUSTIN COLE SOCHA, by and through his attorneys WE FIGHT THE LAW, PLLC, and for his Complaint against the Defendants states unto this Honorable Court as follows:

### INTRODUCTORY AND JURISDICTIONAL STATEMENTS

1. This is an action for money damages brought pursuant to 42 USC §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution and under the common law of the State of Michigan against these

We Fight The Law, P.L.L.C.
8283 N. Telegraph Road
Dearborn Heights, MI 48127

named Defendants in their individual capacities and/or official capacities and against the City of East Lansing, Michigan. Jurisdiction is based upon 28 USC §§ 1331 and 1343. Pursuant to 28 USC §§ 1391 (b), venue is proper in the Western District of Michigan, the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred and in which the Defendants are subject to personal jurisdiction.

2. It is alleged that the Defendants, while acting under color of law and in the scope and course of their employment as police officers, made an unlawful and unreasonable seizure of his person, maliciously caused the prosecution of Plaintiff without legal cause or excuse, thereby violating his rights under the Federal law and his Constitutional rights. It is further alleged that Defendants each have conspired to violate the civil rights of the Plaintiff by the concealment and attempted cover-up of the true circumstances of the arrest and prosecution of Plaintiff.

3. As to the negligent conduct of the Defendants, it is alleged that the Defendants caused injuries to Plaintiffs while acting in the course of employment or service or on behalf of their governmental employer and:

    a. Defendants were acting or reasonably believed that they were acting within the scope of their authority,

    b. the governmental agency was engaged in the exercise or discharge of a governmental function, and

We Fight The Law, P.L.L.C.
8283 N. Telegraph Road
Dearborn Heights, MI 48127

    c. the Defendants' conduct amounted to gross negligence that was the proximate cause of the injury or damage.

4. As to the intentional conduct of the Defendants, it is alleged that:

    a. The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

    b. the acts were undertaken with lack of good faith, or were undertaken with malice, and,

    c. the acts were not discretionary.

## THE PARTIES

5. Plaintiff realleges each preceding paragraph as if more fully stated herein.

6. Plaintiff **JUSTIN COLE SOCHA** was at all times pertinent hereto a resident and a citizen of the City of East Lansing, County of Ingham, State of Michigan.

7. Defendant City of East Lansing is a Municipal Corporation incorporated under the laws of the State of Michigan.

8. The individual Defendants were, upon information and belief, at all times relevant to this Complaint, officers employed by the City of East Lansing, State of Michigan and were at all times relevant to this Complaint each acting in the scope of their employment and under color of law.

9. The facts underlying this action arose in the County of Ingham, State of Michigan.

We Fight The Law, P.L.L.C.
8283 N. Telegraph Road
Dearborn Heights, MI 48127

## **FACTUAL ALLEGATIONS**

10. Plaintiff realleges each preceding paragraph as if more fully stated herein.

11. On Saturday, September 18, 2010, there was a Notre Dame vs Michigan State football night game which began at 8:00 p.m.

12. Plaintiff, being ill, did not attend, but rather, stayed home to rest.

13. Plaintiff's friend, Mike Hileman, was in from out of town, and made plans to stay overnight at Plaintiff's home after the game.

14. On Sunday, September 19, 2010, at approximately 4:12 a.m., Plaintiff wakened from his sleep and realized that the game had concluded, and Mike had not communicated with him; he therefore phoned Mike.

15. Once Plaintiff reached Mike, he discovered that Mike had been trying to call, but had been getting Plaintiff's voice mailbox, which was full, and was unable to leave a message.

16. Mike did not know at that time where he was in relation to Plaintiff's residence; he therefore sent a text to Plaintiff at 4:18 with the address of his location, and Plaintiff agreed to go retrieve him right away.

17. Plaintiff walked to the location, which was a house he had never been to before.

18. Shortly after Plaintiff's arrival, parking enforcement showed up and began knocking at the front door.

19. The owner of the location, whom Plaintiff had never met, advised the young men to us to use the backdoor to leave because he did not want any confrontation with security.

20. Once Plaintiff stepped outside the backdoor, there was an officer ("officer 1") hiding in the bushes.

21. It is unknown whether Thomas or Fuller were officers 1 or 2.

22. The officer 1 said, "Hey where do you think you two are going?"

23. Plaintiff responded, "We're headed back to my apt."

24. Officer 1 then indicated that he didn't know where the young men were coming from and that they "… could have just came from breaking into that house [pointing to the house in question]."

25. Mike explained to the officer that he knew somebody in the house and that Plaintiff had just arrived up to walk him back to Plaintiff's residence.

26. Officer 1 then told Plaintiff that he was going to arrest him and his friend Mike for prowling and trespassing if they young men could not get one of the owners of the house they had departed from to come outside and speak with the police.

27. Officer 1 told Plaintiff to knock on the backdoor, and to try to open the door, which was locked.

28. After approximately fifteen minutes of pounding on the backdoor and pleading through an open window for someone to come outside, Officer 1 then instructed Plaintiff and his friend to the front of the house to continue knocking and pleading at the front door of the house.

29. Plaintiff became embarrassed as people were driving by and slowing down to look.

30. After an additional ten minutes of knocking at the front door, Officer 2 arrived at the scene with a broom for Plaintiff and his friend to use to sweep up glass that was in the street.

31. Both officers instructed the young men to sweep glass from the street.

32. After approximately 45 minutes, Plaintiff began to blister in his palms.

33. Plaintiff explained to the officers that he was ill, that he had nothing to do with the glass in the street, and that he was no longer interested in sweeping anymore.

34. Both officers responded that if Plaintiff failed to comply and continue to "…sweep up the glass" that the young men would both receive trespassing and prowling tickets, and go to jail."

35. After sweeping up the glass into piles, the officers then instructed the young men to spread the glass behind the car tires that were parked in the lot at the house they just left.

We Fight The Law, P.L.L.C.
8283 N. Telegraph Road
Dearborn Heights, MI 48127

36. Plaintiff refused.

37. Officer 2 indicated that he was "going to get these guys evicted this week."

38. Officer 2 indicated that he works, "…very close with the East Lansing Housing Commission and these guys are going to be sorry; I hate these guys," again referring to the house the boys just left.

39. The officers intimidated the boys and coerced them into sweeping the glass and placing it behind the car tires.

40. The officers then said they saw someone looking out the window earlier when the boys were pounding on the door so they were free to go.

41. The boys made it about 30 feet down the street when Plaintiff's friend Mike began reaching in his pockets and discovered that his money was missing.

42. Plaintiff suggested that it may have fallen out in the dark when he presented his identification to the officer, so both men proceeded to walk back to where they had been with the officers in hopes of finding Mike's money.

43. The police officers' car was still in sight as Plaintiff and his friend began walking back into the yard.

44. One of the 2 officers walked up from the street, and said, "I thought I told you I didn't wanna see you again for the rest of the evening or I was going to take you to jail. Now, I'm asking you again, why were you going back to that house?"

We Fight The Law, P.L.L.C.
8283 N. Telegraph Road
Dearborn Heights, MI 48127

45. Plaintiff replied, "My friend and I were walking back to look for his money."

46. Officer 1 directed Plaintiff to walk down to the street.

47. Officer 2 pulled up in a squad car and said, "What do we have here?"

48. Officer 1 told Officer 2 that he caught Plaintiff sneaking through a yard back to the house in question.

49. Officer 2 told Officer 1 "we still have the prowling ticket, do you want to use that one?"

50. The officers agreed between themselves to levy false charges against the Plaintiff and did so.

51. Plaintiff was charged with disorderly and public urination.

52. Each defendant officer testified at the time of trial.

53. Plaintiff was found not guilty by jury on June 21, 2011.

## COUNT I: VIOLATION OF THE U.S. CONSTITUTION AGAINST THE DEFENDANTS (42 USC 1983)

54. Plaintiff realleges each preceding paragraph as if more fully stated herein.

55. By reason of their acts as set forth in the Complaint, the individual Defendants acted under color of state law and with oppression and malice to Plaintiff, to the deprivation of his rights, privileges and immunities secured by the Constitution and laws, to wit;

- The right not to be deprived of liberty or property without due process of law as secured by the 4th and 14th Amendments to the Constitution of the United States of America;

- The right to be free from unreasonable searches and seizures, and to be secure in his person as secured by the 4th and 14th Amendments to the Constitution of the United States of America.

56. Defendants' conduct was in accordance with the practice, usage, policy and procedures, and/or customs of their employer Defendant City of East Lansing, said policies of deliberate indifference to Plaintiff's rights as secured under the U.S. Constitution.

57. As the direct and proximate result of the Defendants' conduct, Plaintiff suffered the injury and damages as set forth herein.

### COUNT II: 42 USC 1983 AGAINST THE CITY OF EAST LANSING

58. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

59. The above-described conduct of the individual Defendants was performed under color of law while they were working as officers for Defendant City of East Lansing.

60. Defendant officers' above-described conduct deprived Plaintiff of clearly established rights to freedom from unreasonable search, seizure and to due process of law.

61. Defendant East Lansing knew or should have known of these Defendants' propensity for such unconstitutional conduct.

9

62. Defendant East Lansing failed to safeguard against said known unconstitutional conduct and such failure amounted to a tacit approval of said conduct and Defendant East Lansing is directly liable for violation of Plaintiff's liberty, property and bodily interests, and right to be free from unreasonable and search, seizure and excessive force.

63. Defendant East Lansing had a custom, pattern and/or practice of failing to take disciplinary action to correct or remedy the unlawful conduct of Defendant Officers and other officers who engaged in similar conduct.

64. Defendant East Lansing had a custom, pattern and/or practice of failing to supervise and/or train Defendant Officers and other East Lansing officers who engaged in similar conduct.

65. Defendant East Lansing has a long standing custom, pattern and/or practice of demonstrating deliberate indifference to unreasonable, inadequate and deficient investigations, illegal searches and seizures and malicious prosecution complained of against its officers.

66. Defendant East Lansing demonstrated deliberate indifference by the adherence to, application and interpretation of, and/or acquiescence in the following policies, customs, patterns and practices, which were wholly defective:

   a. failing to adequately screen active duty police officers and new recruits for propensities for abuses of power and psychological disturbances which could forseeably endanger citizens;

b. tacitly approving an unwritten custom of failing to discipline officers who made unreasonable, inadequate and deficient investigations, illegal searches and seizures and provided false information in support of bogus charges and criminal prosecution;

c. failing to adequately investigate complaints against officers who were claimed to have performed unreasonable, inadequate and deficient investigations, illegal or unreasonable searches and seizures and malicious prosecution;

d. failing to train officers regarding: proper investigation of crime under these circumstances, search, seizure and prosecution;

67. Defendant East Lansing was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and was conscious of the risk of harm posed by the conduct of Defendant Officers.

68. The failure of Defendant East Lansing, under the circumstances, to properly supervise, train and/or discipline Defendant officers and officers who engaged in similar misconduct was objectively unreasonable and demonstrated a deliberate indifference to incidents and complaints against its officers, and deliberate indifference to the rights of persons such as Plaintiff.

69. As a direct and proximate result of the acts and omissions of Defendant East Lansing, Plaintiff suffered severe injury and damage as set forth herein.

## COUNT III: VIOLATION OF 42 USC 1985(3) and 1983 CONSPIRACY TO VIOLATE THE CIVIL RIGHTS OF PLAINTIFF

70. Plaintiff realleges each preceding paragraph as if more fully stated herein.

71. The Defendants named herein conspired and committed acts in furtherance of their conspiracy to deprive Plaintiff of his Civil Rights under the law, depriving him of his rights and privileges granted to citizens of the United States of America.

72. Each Defendant conspired and committed acts in furtherance of a conspiracy to falsely arrest and imprison Plaintiff and to maliciously prosecute Plaintiff, thereby depriving Plaintiff of his civil right to liberty under the Constitution of the United States of America.

73. Each of the defendants acted in furtherance of their conspiracy by engaging in one or more of the acts set forth in this Complaint.

74. As the direct and proximate result of the Defendants' conduct, Plaintiff suffered the damages as set forth herein.

### COUNT IV: MALICIOUS PROSECUTION UNDER 42 USC 1983

75. Plaintiff realleges each preceding paragraph as if more fully stated herein.

76. Defendants wrongfully initiated and caused the continued prosecution and incarceration of Plaintiff and said prosecution terminated in Plaintiff's favor.

77. Defendants made, influenced and/or participated in the decision to prosecute.

78. There was no probable cause to prosecute.

79. As a consequence of the legal proceedings, the Plaintiff suffered a deprivation of liberty beyond the initial seizure, including continued detention without probable cause.

80. As the direct and proximate cause of Defendants' conduct Plaintiff suffered the injury and damages set forth herein.

## DAMAGES

81. Plaintiff realleges each preceding paragraph as if more fully stated herein.

82. As the direct and proximate result of each of the named Defendant's actions as set forth within this Complaint Plaintiffs suffered injury and damages, including, but not limited to:

   a. Loss of liberty;

   b. Legal expenses;

   c. Indignity, embarrassment, humiliation, fright, shock, fear, outrage;

   d. Other damages currently unascertainable;

   e. Exemplary damages and reasonable attorney fees as provided by court rule and statutes, including but not limited to 42 USC 1988.

WHEREFORE Plaintiffs respectfully prays that this Honorable Court grant the following relief:

   a. award monetary damages in an amount that is just, fair and reasonable;

   b. award punitive and/or exemplary damages;

    c.  award actual costs, interest and attorneys fees; and

    d.  grant such other and further relief as is consistent with law and which this Honorable Court deems just and proper.

> Respectfully submitted,
> WE FIGHT THE LAW, P.L.L.C.
>
> By:  /s/ RACINE M. MILLER
> ATTORNEYS FOR PLAINTIFF
> 17600 Northland Park Court Ste 210
> Southfield, MI 48075
> (248) 443-9030 Fax: (248) 443-9031
> e-mail: racine.michelle@gmail.com
> (P72612)

Dated: September 18, 2013

## **JURY DEMAND**

NOW COMES the Plaintiff, by and through counsel, and hereby demands a trial by jury of each and every matter at issue in the above-entitled cause.

> Respectfully submitted,
> WE FIGHT THE LAW, P.L.L.C.
>
> By:  /s/ RACINE M. MILLER
> ATTORNEYS FOR PLAINTIFF
> 17600 Northland Park Court Ste 210
> Southfield, MI 48075
> (248) 443-9030 Fax: (248) 443-9031
> e-mail: racine.michelle@gmail.com
> (P72612)

Dated: September 18, 2013

WE FIGHT THE LAW, P.L.L.C.
8283 N. TELEGRAPH ROAD
DEARBORN HEIGHTS, MI 48127